```
 1   UNITED STATES BANKRUPTCY COURT
 2   DISTRICT OF DELAWARE
 3
 4   In re:                         :   Case No. 02-12687(KG)
                                    :
 5   ACANDS, INC.,                  :   Chapter 11
                                    :
 6           Debtor.                :
     _____:
 7                                  :
     In re:                         :   Case No. 00-04471(KG)
 8                                  :
     ARMSTRONG WORLD INDUSTRIES,    :   Chapter 11
 9   INC., et al.,                  :
                                    :   Jointly Administered
10           Debtors.               :
     _____:
11                                  :
     In re:                         :   Case No. 03-10495(KG)
12                                  :
     COMBUSTION ENGINEERING, INC., :   Chapter 11
13                                  :
             Debtor.                :
14   _____:
                                    :
15   In re:                         :   Case No. 04-11300(KG)
                                    :
16   THE FLINTKOTE COMPANY,         :   Chapter 11
     et al.,                        :
17                                  :   Jointly Administered
             Debtors.               :
18   _____:
                                    :
19   In re:                         :   Case No. 02-10429(KG)
                                    :
20   KAISER ALUMINUM CORPORATION,  :   Chapter 11
     et al.,                        :
21                                  :   Jointly Administered
             Debtors.               :
22   _____:
                                    :
23   In re:                         :   Case No. 00-03837(KG)
                                    :
24   OWENS CORNING, et al.,         :   Chapter 11
                                    :
25           Debtors.               :   Jointly Administered
```

Page 2

1    In re:                        :     Case No. 01-02471(KG)
                                   :
2    UNITED STATES MINERAL         :     Chapter 11
     PRODUCTS COMPANY,             :
3                                  :
             Debtor.               :
4    _____:
                                   :
5    In re:                        :     Case No. 01-02094(KG)
                                   :
6    USG CORPORATION, et al.,      :     Chapter 11
                                   :
7            Debtor.               :     Jointly Administered
     _____:
8                                  :
     In re:                        :     Case No. 01-01139(KG)
9                                  :
     W.R. GRACE & CO., et al.,     :     Chapter 11
10                                 :
             Debtors.              :     Jointly Administered
11   _____:
12
13                                 United States Bankruptcy Court
14                                 824 North Market Street
15                                 Wilmington, Delaware
16
17                                 August 23, 2016
18                                 1:00 PM
19
20   B E F O R E :
21   HON KEVIN GROSS
22   U.S. BANKRUPTCY JUDGE
23
24
25   ECR OPERATOR:  BRANDON MCCARTHY

1    HEARING re Motion of Honeywell International Inc. for Access

2    to Rule 2019 Exhibits

3

4    HEARING re Motion of Honeywell International Inc. to Strike

5    Objection of The North American Refractories Company

6    Asbestos Personal Injury Settlement Trust Advisory Committee

7

8    HEARING re Emergency Motion of the North American

9    Refractories Company Asbestos Personal Injury Settlement

10   Trust Advisory Committee to (1) Consolidate and Continue

11   Hearings and (2) Appoint Rule 2019 Expert and Referee

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dawn South

1   A P P E A R A N C E S :

2   POLSINELLI PC

3        Attorney for Honeywell International, Inc.

4        222 Delaware Avenue, Suite 1101

5        Wilmington, DE 19081

6

7   BY:  JUSTIN K. EDELSON, ESQ. (TELEPHONIC)

8

9   MCDERMOTT WILL & EMERY LLP

10        Attorney for Honeywell International, Inc.

11        340 Madison Avenue

12        New York, NY 10173-1922

13

14   BY:  DARREN AZMAN, ESQ. (TELEPHONIC)

15

16   SAUL EWING LLP

17        Attorney for Owens Corning

18        555 Fifth Avenue

19        Suite 1700

20        New York, NY 10017

21

22   BY:  ADAM H. ISENBERG, ESQ. (TELEPHONIC)

23

24

25

1   RICHARDS, LAYTON & FINGER, P.A.

2        Attorney for Armstrong World Industries Inc.

3        One Rodney Square

4        920 North King Street

5        Wilmington, DE 19801

6

7   BY:  JASON M. MADRON, ESQ. (TELEPHONIC)

8

9   PACHULSKI STANG ZIEHL & JONES

10        Attorney for W.R. Grace & Co., et al.

11        919 North Market Street

12        17th Floor

13        Wilmington, DE 19801

14

15   BY:  JAMES E. O'NEILL, ESQ. (TELEPHONIC)

16

17   CAPLIN & DRYSDALE

18        Attorney for NARCO TAC

19        One Thomas Circle, NW

20        Suite 1100

21        Washington, DC 20005-5802

22

23   BY:  KEVIN MACLAY, ESQ. (TELEPHONIC)

24

25

1    MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP

2         Attorney for Natalie D. Ramsey

3         123 South Broad Street

4         Avenue of the Arts

5         Philadelphia, PA 19109

6

7    BY:  NATALIE D. RAMSEY, ESQ. (TELEPHONIC)

8

9    UNITED STATES DEPARTMENT OF JUSTICE

10        Attorney for the Office of the United States Trustee

11        844 King Street

12        Suite 2207

13        Wilmington, DE 19801

14

15   BY:  RICHARD SCHEPACARTER, ESQ. (TELEPHONIC)

16

17   YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

18        Attorney for Future Claimants and Interested Party

19        Rodney Square

20        1000 North King Street

21        Wilmington, DE 19801

22

23   BY:  EDWIN J. HARRON, ESQ. (TELEPHONIC)

24

25

1                     P R O C E E D I N G S

2           THE COURT:  Counsel, good afternoon, Judge Gross

3    is on the telephone now, and what I believe we have for

4    today is a status scheduling conference in -- on these Rule

5    2019 motions.  I know that there is a motion to strike,

6    there is a motion to consolidate, there's the Rule 2019

7    motion, and there is a motion to appoint a Rule 2019 expert

8    and referee.  So those are the matters we've got, and I'll

9    be pleased to hear from you.

10          But let me just at the outset indicate that what

11   my preference would be and then we can discuss them --

12   discuss it.

13          I think I can decide the motion to strike on the

14   papers that I've got without argument, which means that we

15   will then have -- and all the cases are now assigned to me

16   -- as of the asbestos cases are assigned to me, which I

17   think takes care of consolidation, but I'll hear from you on

18   that.

19          So I think what we've got to do is schedule the

20   Rule 2019 motion and the appointment of a -- the motion to

21   appoint a Rule 2019 expert and referee.

22          But having indicated that I'll be pleased to hear

23   from you now.

24          MR. EDELSON:  Good afternoon, Your Honor, this is

25   Justin Edelson for Honeywell.  Appreciate you making time

1    for us this afternoon on such short notice.  My co-counsel,

2    Darren Azman from McDermott Will & Emery, is on the line as

3    well, and he is going to address the Court with respect to

4    the access motions and the TAC's referee motion.

5              THE COURT:  All right.  Thank you, Mr. Edelson.

6              MR. AZMAN:  Good afternoon, Your Honor.  Darren

7    Azman, McDermott Will & Emery, counsel to Honeywell.  Thanks

8    again for hearing this on short notice and by telephone for

9    the convenience of the parties.

10             The scheduling dispute has arisen because -- and

11   I'll lay out what the parties' positions are as objectively

12   as I think I can do.

13             THE COURT:  All right.

14             MR. AZMAN:  So the NARCO TAC believes that the --

15   we'll call it the referral motion if that's okay with Your

16   Honor or the referee motion -- the TAC believes that the

17   referee motion should be determined first heard and

18   adjudicated first prior to the access motions.  Honeywell

19   believes that the access motions should at least be heard

20   first.  Not necessarily adjudicated, but should be heard,

21   and that's for a few reason, Your Honor.

22             First, mediation, which is essentially what the

23   TAC is asking for, and if that's not then I would ask that

24   they clarify what exactly they're talking about when they

25   ask the Court to appoint Judge Fitzgerald to do whatever it

1    is they're asking Judge Fitzgerald to do, but mediation is

2    something that is typically imposed on parties only after

3    the parties have failed to reach a resolution and usually

4    after several contentious hearings, and that has not

5    happened here.  Briefing is not even complete on the pending

6    motions, and there has not been a single hearing on the

7    merits, as Your Honor knows.  So we think the access motion

8    should be heard prior to Your Honor hearing the referral

9    motions.

10            If of course Your Honor later finds that mediation

11   is proper we can address it at that time, but mediation at

12   this stage would be premature and would impose costs on

13   Honeywell only, not the TAC given Honeywell's funding

14   obligations under the NARCO trust agreement.  So that's the

15   first argument.

16            The second reason, Your Honor, is as you know

17   Honeywell opposes the referral motion for a number of

18   reasons.  One of those reasons, is that there is nothing to

19   mediate.  There's several case law on the same exact facts

20   and the same exact Chapter 11 cases, and I don't want to get

21   into the merits, and I know that partially does, but it's

22   important for context.

23            We intend to demonstrate the simplicity of this

24   case and these motions to Your Honor in opposing any attempt

25   to refer the motions to mediation, and a TAC's argument for

1  having the referral motions heard first is that there will

2  be more efficient -- it would be more efficient to do that.

3  But what I'm telling Your Honor is there will be no

4  efficiencies in hearing the mediation motion first, because

5  we will necessarily have to wade into the substance of the

6  access motion -- out of the access motions.

7          And then third, Your Honor, like I eluded to

8  before, it's not at all clear what exactly the TAC is

9  seeking under its referral motion, perhaps you have more

10  clarity than I do, but it seems to us that it's nothing more

11  than a delay in adjudicating Honeywell's access motions and

12  seeking to shift the cost to Honeywell of fighting that and

13  increasing their cost of doing it.

14          They cite the local rule in Delaware that permits

15  Your Honor to appoint a mediator, but they don't actually

16  ask for Judge Fitzgerald to be appointed as a mediator, they

17  call it a Rule 2019 expert and referee.

18          Again, I'm not really sure what role they

19  contemplate, so I think as an initial matter the TAC needs

20  to better explain what it is that they're seeking for Judge

21  Fitzgerald to do if she's appointed in any capacity.

22          And one important fact related to that is these

23  2019 exhibits that we're seeking access to they've already

24  been produced in a redacted form that was approved by the

25  Delaware court -- the Delaware District Court specifically

1    on appeal, and all these 2019 exhibits in that redacted

2    form, they're on file with the western district of

3    Pennsylvania, and we've confirmed that with the special

4    discovery master who was previously appointed to do all

5    these redactions.

6            So I only tell Your Honor this because I want to

7    point out there's no need for a special discovery master to

8    repeat that work, if that's what the NARCO TAC was concerned

9    about.  Again, I don't necessarily understand fully what

10   role they contemplate for Judge Fitzgerald, but if that's

11   what it was there's no need for somebody to do that work,

12   it's already been done.

13           So, Your Honor, in sum I just don't see any reason

14   why the referee motions should be heard first, Your Honor

15   can always table that motion for a later time if after

16   hearing the debtor's -- excuse me, not the debtor's --

17   Honeywell's and the TAC's arguments on the access motion,

18   you determine that it is cause to refer to a mediator then

19   that's fine, we can discuss it at that time, but right now

20   it just doesn't make much sense.

21           Thank you, Your Honor.

22           THE COURT:  Let me ask you this, Mr. Azman, would

23   it make sense -- and it's a question -- would it make sense

24   to hear both the access and the reference motion at the same

25   time?

1          MR. AZMAN:  We would not be opposed to that.

2    That's something that we did discuss with the TAC, they were

3    against it, but I guess I would want to discuss a little bit

4    further and clarify what that would actually look like.  Are

5    you suggesting that it be the same hearing, one single

6    hearing would be scheduled and Your Honor would hear the

7    access motions and then thereafter -- right after that you

8    would hear the referral motions, is that what Your Honor is

9    suggesting?

10          THE COURT:  That's what I had in mind and then I

11    would take them under consideration and issue a ruling.

12          MR. AZMAN:  Your Honor, I don't see any problem

13    with that.

14          THE COURT:  All right.  And let me ask you this,

15    Mr. Azman, how long do you think this hearing will take?  Is

16    it a full-day hearing?

17          MR. AZMAN:  No, absolutely not.  Like I said

18    before, we think that this -- these cases are very simple

19    and in our reply brief on the access motions, which it is 30

20    pages or so that will be filed so I apologize in advance for

21    that, but the problem here is that many of the arguments

22    have been recycled by the TAC from prior litigation and that

23    have already been rejected by the district court, so it is

24    important to go through each of those points and show Your

25    Honor how and why each of those arguments under the same

1    facts and law was rejected.  So that's really the only

2    reason why the hearing might last any significant period of

3    time.  But if you're asking me for how long I might need for

4    my side of the case, about an hour, no more.

5            THE COURT:  All right.  And then the other side,

6    and then of course if we decide to go with the reference

7    motion at the same time that would then take additional

8    time.

9            MR. AZMAN:  Yes, but I think a lot of the facts

10   are intertwined that support the relief we're seeking in the

11   access motions that also support our objection to the

12   referee motion, so I don't know that I'd add much more than

13   a half an hour for that.

14           THE COURT:  All right.  All right, I thank you,

15   and I'll hear from anyone else now who wishes to be heard.

16           MR. AZMAN:  Thank you, Your Honor.

17           MR. MACLAY:  Thank you, Your Honor.  This is Kevin

18   Maclay for the NARCO TAC.

19           THE COURT:  Yes, sir.  Good afternoon.

20           MR. MACLAY:  Good afternoon.  A couple of points,

21   but one in response -- well let's make an overarching point.

22           With respect to the order of how things should be

23   heard, we think it would be inefficient to hear them

24   together and it would be an incredible efficiency to hear

25   them separately, and let me explain why that's the case.

1              What we are seeking to have Judge Fitzgerald be

2     appointed to do as a court-appointed expert is to listen to

3     the arguments, both factual and legal of the parties, and

4     issue a report and recommendation for Your Honor's

5     consideration.

6              You heard from Mr. Azman today that these issues

7     are very simple, and then he told you he's filing a 30-page

8     reply brief in support of a 15-page motion.  I suggest to

9     Your Honor that that is overstated to say the least.  It's

10    actually quite complicated, and I'll delve just a little

11    teeny bit into those complexities here to make clear to Your

12    Honor that Judge Fitzgerald would be useful to Your Honor,

13    and that's really the standard for whether or not Your Honor

14    should appoint a court-appointed expert, would they be

15    useful to Your Honor.  We think that because Judge

16    Fitzgerald, (a), drafted the initial order that they're

17    seeking to enforce here to get the documents replaced off

18    the docket, (2), (indiscernible) in the context of the

19    Garlock (ph) dispute years ago, and (3)e, implemented Judge

20    Stark's ultimate decision to give restricted access to

21    certain of those documents.  And finally it is the court-

22    appointed mediator in the NARCO proceeding, the proceeding

23    in which NARCO claims it wishes to use these documents.

24             For all of those reasons she would be very well

25    situated to give Your Honor a report and recommendation both

1    (a), whether access should be granted at all consistent with

2    the reasoning of Judge Stark's ruling, because as we have

3    put in our papers, and I'm not going to reiterate it here,

4    our argument, and I think it's a strong wrong, is that Judge

5    Stark's rationale would preclude the use that NARCO

6    (indiscernible) to use these documents for.  And if that's

7    true they shouldn't get them at all.  And Judge Fitzgerald

8    is uniquely situated to opine in the first instance on that

9    because of her role in implementing the order that Judge

10   Stark issued, that was the role she was given and that was

11   the role she took on.

12          So because these issues are in fact quite

13   complicated, because she has the unique knowledge of not

14   only the 2019 issues in general but in the context of a

15   simpler body of documents and in the context of the NARCO

16   proceeding particularly, we think she'd be useful to Your

17   Honor.  And the problem with doing it at the same time is

18   what we would propose to do is have Judge Fitzgerald hear

19   the arguments of counsel, read the briefs, and give Your

20   Honor a report and recommendation.  It wouldn't make any

21   sense for Your Honor to hear argument from the parties

22   directly prior to that happening.  It would be inefficient,

23   because it could potentially run the risk of mooting out our

24   request to have her appointed in the first place as a court-

25   appointed expert to give Your Honor that report and

1    recommendation.  She really needs to be the person hearing

2    the arguments and reading the briefs ab initio so that she

3    can then provide you the report and recommendation that you

4    would review and either choose to adopt or not.

5            So that's -- in terms of time and sequence we

6    think it's important to have the emergency motion heard

7    first.  And I would note two other points in that

8    connection, Your Honor.

9            First, that motion is fully briefed.  We have

10   filed our motion, they opposed it, and we do not plan to

11   file a reply brief.  We think the papers are adequate as

12   they are.  And so we would like an oral argument

13   opportunity, but we think that could happen in front of

14   Judge Fitzgerald and that's ready to go.

15           And we would note that Judge Shannon's order

16   suggested that the emergency motion would result in the case

17   being stayed while Your Honors consider the issues in the

18   last remaining piece of our motion if the appointment of

19   Judge Fitzgerald as a court-appointed expert if Your Honor

20   chose to do that.

21           So we think that that last remaining piece of the

22   emergency motion should be heard first as a matter of

23   sequence.

24           Did Your Honor have any questions about the

25   sequencing before I go on to the next point?

1           THE COURT:  Well the only question I've got I

2    guess, Mr. Maclay, is this.  The parties are going to have

3    to travel here to argue this matter, and I know you think

4    it's a foregone conclusion, you know, that I'll appoint

5    Judge Fitzgerald, but is it really that much extra work to

6    argue both motions?

7           MR. MACLAY:  Your Honor, if the concept is that

8    Judge Fitzgerald would hear the arguments of counsel and

9    make a report and recommendation to you, she would

10   presumably need to be in the courtroom when those arguments

11   are made.

12           And we would also note that we still don't have,

13   the other side their reply brief to the 2019 access motion,

14   and that motion remains unfinished.  And we believe given

15   the brevity of their original motion, compared with what

16   they have now acknowledged to be a twice as long reply

17   brief, that we're going to need a surreply after that

18   underlying motion.

19           And so we would ask as part of any scheduling

20   order that Your Honor (indiscernible) today too deals with

21   the 2019 access motion itself that they be ordered to file

22   their reply brief in time for us to file a surreply, given

23   the fact that they kept their comments somewhat dry in their

24   first motion.

25           But so that the reason I think it would be better,

1   Your Honor, to have Judge Fitzgerald's motion decided first

2   -- and I'm not intending to presuppose that I understand how

3   Your Honor will come out on that -- would be -- otherwise it

4   would have -- the whole hearing would have to happen again

5   presumably in front of Judge Fitzgerald unless she were in

6   the courtroom during this dual hearing.

7            MR. AZMAN:  Your Honor, that's a concern that

8   would arise in any situation where a mediator might be

9   appointed.  So I don't understand counselor's argument on

10  that point.

11           I think Your Honor made it -- said it best, that

12  they are presupposing that it is so clear about how Your

13  Honor is going to rule on their referral motion.

14           Like I said before, I don't know that I've ever

15  seen a case where a motion gets filed and an objection gets

16  filed and the court just refers to mediation and doesn't

17  even have a hearing on it.  Your Honor may be familiar with

18  those instances, but I am not, and I don't think it's

19  appropriate here.

20           But what I'm hearing from the TAC counsel are a

21  number of arguments for why they think Judge Fitzgerald

22  should be appointed.  But what I'm still not hearing is why

23  that needs to come first other than they think that the

24  Fitzgerald referral motion will be granted.

25           MR. MACLAY:  And, Your Honor, could I respond?

1           THE COURT:  Sure, Mr. Maclay.

2           MR. MACLAY:  As a response to that, Your Honor,

3    it's quite simple.  If we were to have argument on motions

4    that you were to decide should be presented in some form to

5    Judge Fitzgerald, in the absence of Judge Fitzgerald, we

6    would have to do the whole thing twice and that would be

7    wasted.  It would make a lot more sense and I think it would

8    be a lot more useful to Your Honor to have the benefit if

9    you decide it would be useful to you, of course, but to have

10   Judge Fitzgerald's analysis of the arguments of the parties

11   prior to hearing oral argument from the parties prior to

12   making your decision.

13           If Judge Fitzgerald is going to be useful it's at

14   the earlier stages is the point we're making, Your Honor,

15   and that's why we don't think it should essentially be

16   mooted out by having a potentially wasteful proceeding when

17   the issues are ripe now.

18           The issue of whether or not she should be

19   appointed is totally briefed, there's nothing left to be

20   done about it except for a hearing, and potentially, Your

21   Honor, (indiscernible) on the papers if you thought it was

22   appropriate, although we think a hearing might be useful,

23   but that's for Your Honor to decide.

24           But we do feel that to wait for the Fitzgerald

25   appointment would risk mooting it out and would be

1    inefficient, and that's useful to Your Honor potentially.

2              THE COURT:  All right.  Anyone else wish to be

3    heard?

4              MR. AZMAN:  Your Honor, I apologize for

5    interrupting, it's Darren Azman again.  If I could just

6    introduce one additional fact, and it does -- this does go

7    to the merits and it'll certainly be discussed at whatever

8    hearing occurs on the referral motion, but I think it's

9    important to bring to Your Honor's attention at this stage.

10             Judge Fitzgerald has a conflict.  She has told --

11   her colleague, who does work for her in connection with the

12   mediation, has told us that there is a conflict, and

13   Honeywell is not going to waive that conflict.  I know that

14   TAC disagrees that there's a conflict, but Judge Fitzgerald

15   has already prejudged the relief that we are seeking to the

16   access motions, she entered an order in these exact Chapter

17   11 cases the 9 Garlock access to the 2019 exhibits.  I don't

18   think the conflict could be any clearer, and in fact there

19   are states that have statutes that show -- that state that

20   this is a direct conflict, and Florida is one of those

21   states.  We haven't done exhaustive research about whether

22   it's Delaware or Pennsylvania, but this -- I don't see how

23   there's not a conflict here.

24             MR. MACLAY:  Your Honor, Kevin Maclay for the

25   NARCO TAC.

```
 1              THE COURT:  Yes.

 2              MR. MACLAY:  Two points.

 3              THE COURT:  Yes.

 4              MR. MACLAY:  First of all we did our own research

 5     on this and we couldn't find single precedent supporting any

 6     kind of a conflict.

 7              And secondly, I don't believe that what you heard

 8     from Mr. Azman is correct with respect to Judge Fitzgerald's

 9     position, and in fact if Ed Harron is on the line I believe

10     he has had a communication with her about the conflict issue

11     and I would ask that he speak now if he's on the phone.

12              MR. HERRON:  I am on the phone.  Hello, Judge

13     Gross, this is Ed Herron.

14              We filed a joinder on behalf of the NARCO future

15     claims representative, and I believe our FLINTCO future

16     claims representative also joined in the committees'

17     position, and we've had several conversations, I, along with

18     Kevin Maclay's partner, Leslie Kelleher, I've spoken to

19     Judge Fitzgerald about this conflict issue.

20              What Judge Fitzgerald told us was that she doesn't

21     believe that she is conflicted, and her only hesitation from

22     becoming involved was her first and foremost priority was to

23     attempt to resolve the issues and dispute in the NARCO case

24     where she's been appointed by the court and she wouldn't

25     want this process to disrupt anything she's doing this.
```

1              But she had told us that she doesn't see a

2      conflict, she'd be happy to assist the Court, to the extent

3      the Court believes her assistance would be useful, and she

4      had told us that Honeywell had yet to articulate the basis

5      upon which they were asserting a conflict.

6              And also, Your Honor, I think Mr. Azman said just

7      a few moments ago that he was informed by one of the judge's

8      colleagues that it was her view that she had a conflict.

9      I'm wondering if he misspoke, because that's directly

10     contrary to what Judge Fitzgerald told us directly.

11             MR. AZMAN:  Your Honor, all I can say and that I

12     said before, my colleague, Mr. Calandra, was speaking with

13     Mr. Shiner, who is Judge Fitzgerald's colleague, I was in

14     the room, the phone was on speaker, and I heard in no

15     uncertain terms that Mr. Shiner believes that there is a

16     conflict.

17             You know, perhaps it would be best for Judge

18     Fitzgerald to weigh in on this, because I do think that to

19     the extent Judge Fitzgerald is conflicted, and as I said

20     Honeywell is not going to consent, I think that all but guts

21     the argument that these should be referred to anybody.

22             Certainly the TAC is not proposing, and they

23     haven't said it yet in any of their pleadings, that it would

24     be efficient to have these heard by a mediator who has no

25     idea about what we're talking about in these cases.  I think

1    that that is the basis for their argument.  But perhaps if

2    -- you know, I don't think it makes sense for us to argue

3    back and forth about who said what.

4              MR. HERRON:  Right.

5              MR. AZMAN:  You know, I told Your Honor what I

6    heard and Ed said what he heard --

7              MR. HERRON:  Yeah.

8              MR. AZMAN:  -- and that's fine.

9              MR. HERRON:  And we -- just to respond to that

10   briefly.

11             Mr. Shiner was also on the call we had with the

12   judge, so there's something being lost in translation.  It

13   sounds to me that if Honeywell is going to hang its hat on

14   this conflict issue that's probably the gaiting issue that

15   we need to brief.

16             MR. AZMAN:  Well, I don't think that we're hanging

17   our hat on this issue, it is just one additional fact that I

18   wanted to introduce for the judge to be aware of because it

19   would be coming down the road.

20             I still rely, Your Honor, on all the arguments I

21   made before, and I think it's also Your Honor's view, at

22   least coming in in this hearing, that the access motion

23   should be heard at the very least together with the referral

24   motion.  So that's not the only issue we see in the ordering

25   here.

1          THE COURT:  All right.  Well I do believe that the

2    motions should be heard together.  If in fact I refer the

3    matter to Judge Fitzgerald it may have been a waste or

4    perhaps Judge Fitzgerald would feel satisfied to review the

5    transcript, I'm not sure which, but because parties will be

6    traveling, you know, some distance, I just think it makes

7    sense to hear both motions at the same time before me and

8    then I will make the decision on both.  I may make the

9    decision to refer the matter, I may make the decision not to

10   refer the matter, but that remains to be seen.

11          MR. AZMAN:  Your Honor, I have one additional

12   question.

13          THE COURT:  Yes, Mr. Azman.

14          MR. AZMAN:  This is Darren Azman for Honeywell.

15          THE COURT:  Yes.

16          MR. AZMAN:  I think it would be helpful for the

17   NARCO TAC to articulate their view.

18          If -- assuming that Judge Fitzgerald agrees that

19   she is conflicted or we are able to demonstrate that she's

20   conflicted, however it comes about, the Court acknowledges

21   that Judge Fitzgerald is conflicted, is it still the NARCO

22   TAC position that some third party should be brought in to

23   mediate this, or is that the basis of their motion?  Because

24   I think that will help the Court if we can get some

25   clarification from Judge Fitzgerald.  Perhaps the motion is

1     mooted if that's their only basis.

2              THE COURT:  All right.  Let me ask Mr. Maclay that

3     question.

4              MR. MACLAY:  Certainly, Judge Gross.

5              The short answer is no, we don't have a different

6     (indiscernible) if Judge Fitzgerald for whatever reason is

7     unable or unwilling to accept the appointment we would

8     withdraw the motion.

9              I would note however that we are not seeking

10    mediation, that's certainly one of the legal bases that Your

11    Honor could appoint her, but we are seeking to have her as a

12    court-appointed expert for report and recommendation,

13    because we thought that would be the most appropriate and

14    efficient use of her time and her knowledge, just for

15    clarification.

16             But no, we do not seek to have a different person

17    appointed for whatever reason Judge Fitzgerald can't do it.

18             THE COURT:  Well let me ask this question.  How do

19    we resolve the question of whether there is a conflict or

20    not?

21             MR. MACLAY:  Well, Your Honor, the tricky thing

22    about that is in their papers they claimed a conflict but

23    they didn't cite any authority, and so we did our own

24    research to try to figure out what they must be relying on

25    and we couldn't come up with a single authority to support

1    their position.

2            So as things stand we filed our motion and they

3    opposed it, and we did not plan to file a reply because we

4    think it's adequately briefed.  But if they feel the need to

5    file a supplemental brief just on the conflicts issue we'd

6    be happy to respond and as your court to set a scheduling

7    order to lay out the timing of those papers before we have

8    this one hearing.  If the interest is going to be efficiency

9    we should have all the arguments on the table beforehand and

10   not have them, you know, thrust upon us by surprise at the

11   hearing.

12           THE COURT:  Mr. Azman, will the brief you're

13   filing, the roughly 30-page brief, will that include

14   discussion of the conflict?

15           MR. AZMAN:  Yes, we're happy to address that issue

16   in the responsive briefing.  But I just want to remind Your

17   Honor resolution of the conflict issue -- the TAC has said

18   they'd withdraw their motion to appoint the referee if Judge

19   Fitzgerald is conflicted for one reason or another, however

20   that's proven out, but the same cannot be said if there is

21   no conflict -- I'm sorry -- if there is a conflict.  If

22   there is a conflict that doesn't mean that we are not -- no

23   longer going to oppose the appointment of Judge Fitzgerald,

24   we still will oppose the appointment of Judge Fitzgerald.

25   It doesn't turn on that.

1          So I don't think the ordering is impacted in any

2    way by that argument.  I still think that these need to be

3    heard at the same hearing, as Your Honor has already told

4    the parties.

5          But yes, we are happy to address the conflict

6    issue.  Perhaps it'll be as a supplemental brief as the TAC

7    suggested, that might make more sense.  And in the interim

8    perhaps the TAC and us can have a discussion with Judge

9    Fitzgerald to get some clarification from her on whether

10   there's a conflict.  I think everybody on this call would

11   agree that if Judge Fitzgerald sees a conflict then there

12   certainly is a conflict, but even if she does not believe so

13   we still believe there is one and would like an opportunity

14   to demonstrate to the Court why there is a conflict.

15          MR. MACLAY:  Yeah, if I could speak to that, Your

16   Honor?

17          THE COURT:  Yes.

18          MR. MACLAY:  What they're essentially saying now

19   is they want to have the parties talk to Judge Fitzgerald

20   now and then have Your Honor hear all the arguments.  That's

21   the opposite of the efficiencies that they were claiming a

22   few minutes ago.

23          If we're going to go together, the two parties, to

24   talk with Judge Fitzgerald and essentially argue to her

25   about why she is or isn't conflicted, well then it's already

1    taking that issue and putting it in front.  If we're going

2    to do that we might as well just hear the emergency motion

3    first.  That's exactly what --

4         MR. AZMAN:  No, I'm merely proposing that Judge

5    Fitzgerald say yes or no she thinks she's conflicted.  I

6    don't -- I'm not proposing that we make our arguments to

7    her.  That I propose will be heard by Your Honor.

8         MR. MACLAY:  Well I think Mr. Harron made clear

9    that she just told us what she thinks about that, so I'm not

10   quite sure what you're proposing then.

11        MR. AZMAN:  Well --

12        THE COURT:  Well let me ask you this question.

13   Could I issue a rule to show cause or something similar to

14   Judge Fitzgerald asking her on the record whether she has a

15   conflict or not?

16        MR. AZMAN:  Your Honor, we don't see any issue

17   with doing that.

18        THE COURT:  How about --

19        MR. MACLAY:  The only issue with doing that, Your

20   Honor, is that it puts the burden on her to show the absence

21   of a conflict when the burden is actually on Honeywell to

22   show that there is a conflict.  It seems to reverse the

23   order of the burden of proof.

24        MR. AZMAN:  I don't think --

25        MR. MACLAY:  It's difficult -- in other words

1     Judge Fitzgerald should have the benefit of hearing what

2     Honeywell's conflicts argument is before responding to it.

3     I mean she could --

4               THE COURT:  Well whether she has -- whether Judge

5     Fitzgerald has a conflict or not the matter is still in my

6     hands whether to refer it or not.  Now if she has a conflict

7     then it seems to me that's the end of the story, there's no

8     referral.  If she does not have a conflict them of course

9     the issue is ripe.

10              MR. AZMAN:  We agree, Your Honor, and I don't

11    think there's any type of burden shifting going on with that

12    as the TAC suggests.  Judge Fitzgerald isn't a party to this

13    proceeding, she's not -- you know, she doesn't have any

14    burden whatsoever, the TAC is right, but Your Honor can

15    still request that a party outside of the proceeding show

16    cause for whether or not she has a conflict or anything

17    else.

18              So we would agree with that approach, and that

19    would potentially, like I said, moot the referral motion if

20    she acknowledges there's a conflict or otherwise demonstrate

21    to the Court that she thinks there might be a conflict.  And

22    of course if that's not the case then we would proceed as

23    Your Honor suggested and have a hearing on both of the

24    motions.  I think that's an adequate way to proceed.

25              MR. MACLAY:  And, Your Honor --

1        THE COURT:  I mean I'm reluctant to have the

2   parties talk to Judge Fitzgerald about a conflict.  I think

3   we might wind up with the same problem we're having now, and

4   that is one of translation of what Judge Fitzgerald has to

5   say.

6        MR. AZMAN:  I completely agree, Your Honor.

7        MR. MACLAY:  Yeah, that's fine, Your Honor.  If

8   Your Honor wants to hear from Judge Fitzgerald on this point

9   we don't have an objection to that.

10        THE COURT:  And by the way, I've had no

11   conversation with Judge Fitzgerald and I would not have a

12   discussion with her outside of the parties' presence.  Is

13   that -- do you agree with that position?

14        MR. MACLAY:  If Your Honor were to appoint her

15   certainly we would expect that Your Honor would have

16   conversations with her without the parties' presence.  Prior

17   to that point I think it's up to Your Honor.

18        THE COURT:  Okay.  All right.  Let me give that

19   some thought.  But let's talk about scheduling the motions

20   at the moment -- the access motion and the referral motion.

21   And I recognize that NARCO takes a strong view that the

22   referral motion should be heard first, but I just think that

23   from an economy of time basis they ought to be heard

24   together.

25        Now, tell me about your brief, Mr. Azman, and when

1    you expect to file that.  And I'm not pressing you.

2           MR. AZMAN:  No, I understand.  We were simply

3    going to be mindful of the rules under Delaware law, this

4    wasn't gamesmanship, we were going to file when it was due,

5    which is three days I believe -- well Mr. Edelson can

6    confirm that for me as your local counsel -- but I believe

7    it's three days or two days before the hearing.

8           So when we'll be ready.  I would say we'd be in a

9    position to file it no later than the middle of next week,

10   which would be August 30 -- let's say August 31st would be

11   fine.

12          MR. MACLAY:  Okay.  And, Your Honor, on behalf of

13   the NARCO TAC we would ask for a two-week period to review

14   that paper and potentially file a surreply given the fact

15   that the original motion was only half the length of the

16   reply and in our view omitted arguments that we expect to

17   see in the reply, so we feel like we're going to need that

18   opportunity.

19          MR. AZMAN:  Your Honor, there's no basis for a

20   surreply here.  I will submit to the Court that our reply,

21   it literally takes each argument that the TAC makes and

22   quotes it in a section heading and it has two to three

23   sentences citing to Judge Stark's district court opinion and

24   explains where in that opinion the ruling can be found that

25   directly contradicts the TAC's argument.

1            I don't even know what they're going to reply with

2       or what they could reply where.  I'm sure that they can

3       draft something, but I just don't think a surreply is

4       justified under the circumstances.

5            And perhaps maybe after the reply is filed if the

6       NARCO TAC still believes that there is cause or a basis to

7       have to file a surreply we can readdress that, but before

8       they have even seen a reply I find it hard to believe that

9       they can justify the need for a surreply.  I think they need

10      to read it first.

11           MR. MACLAY:  And, Your Honor, just to be clear,

12      we're asking for a two-week period for the opportunity to

13      file a surreply.  Obviously if we get their reply and don't

14      think it needs a surreply we wouldn't file one.  But a 15-

15      page motion followed by a 30-page reply speaks for itself.

16      Every single rule in this country gives you far fewer pages

17      for a reply brief than a main brief for a reason, it's

18      supposed to be a lot shorter (indiscernible) paper.  Fifteen

19      and 30 doesn't fit within that paradigm, so there's at least

20      reason to suspect that we're going to need a surreply.

21           What we're asking for is that the schedule

22      accommodate the potential need, while recognizing that if we

23      don't need it we wouldn't take it.

24           THE COURT:  All right.  Well here's what we'll do.

25      I will build in time, which we will discuss in a moment, for

1    a surreply, but will have -- if you decide that you would

2    like to file a surreply first you'll have discussion with

3    Mr. Azman, and absent agreement between you you'll come back

4    to me and ask for permission to file a surreply.

5             MR. MACLAY:  Thank you, Your Honor.

6             THE COURT:  Okay.

7             MR. AZMAN:  Thank you, Your Honor.  That's

8    acceptable.

9             THE COURT:  Good.  All right.  So I am going issue

10   a rule to show cause to Judge Fitzgerald.  She's not a party

11   to this matter though is she?

12            MR. HERRON:  No.  No, she's not.

13            THE COURT:  Well maybe I'll do a letter then.

14   I'll do something to get her response.

15            MR. HERRON:  If you want to tell her the NARCO TAC

16   wouldn't have a problem with that, Your Honor, I don't know

17   Honeywell's position on it, but we'd be fine with that for

18   efficiency sake.

19            MR. AZMAN:  We're fine with whether it's an order

20   to show cause, a letter, a -- well a phone call as Your

21   Honor said is probably not the best route, but we'd be fine

22   with anything that gets Judge Fitzgerald to explain her

23   position to Your Honor so that you can make an informed

24   decision.

25            THE COURT:  Okay.  All right.  That's what I'll do

1    then.  I will write to her and ask for a response.

2              MR. AZMAN:  With that letter be on the docket or

3    is that just a letter that'll be -- that will copy the

4    various parties?

5              THE COURT:  It would be on the docket.

6              MR. AZMAN:  Okay.  Great.  Thank you, Your Honor.

7              THE COURT:  Yes.  Now, let's talk about scheduling

8    these motions.  Let me look --

9         (Pause)

10             THE COURT:  Don't get excited with me.  How is

11   October 6?  Is that much later than the parties expected or

12   is it about the right time?

13             MR. AZMAN:  I think I can answer for both of us.

14   The TAC probably thinks that it's just enough time and

15   Honeywell just thinks that's too late.  But if Your Honor's

16   calendar does not permit an earlier date, you know, that's

17   what it is.  Does Your Honor have an earlier date that

18   would --

19             THE COURT:  Well I do, Mr. Azman, I have

20   October 14 -- I mean I'm sorry -- September 14, but that may

21   be too soon.

22             MR. AZMAN:  Uh-huh.

23             MR. MACLAY:  Yeah, that would be too soon.

24             MR. AZMAN:  Even I would agree, that's probably

25   too soon.

1            THE COURT:  I also have -- well I don't want to do

2    it the -- no, I don't want to do it then because I have a

3    full-day hearing the next day that I have to prepare for.

4    October 6 is really the first day that I've got a full day.

5            MR. AZMAN:  Your Honor, that's fine with us if

6    it's acceptable to the TAC.

7            MR. MACLAY:  It's fine with the TAC, Your Honor.

8            THE COURT:  All right.

9            MR. HERRON:  Your Honor, I'm sorry, this is Ed

10    Herron.  I have a commitment on the west coast on the 6th.

11    I'm sure I can have one of my other partners attend the

12    hearing, but I'd like to be there in person, if possible.

13            THE COURT:  We could do it the 14th.

14            MR. AZMAN:  Your Honor, I think the 6th was sort

15    of already past the period of time.  There are a lot of

16    parties here involved, right, there's a number of parties

17    who filed joinders.  I don't know that we're going to find a

18    date that is soon enough and is also going to work for every

19    single individual lawyer.

20            MR. MACLAY:  And of course it's fine for the NARCO

21    TAC, Your Honor, and I would note there's really no exigency

22    here, but I (indiscernible) Your Honor's decision, but the

23    14th works for the NARCO TAC.

24            THE COURT:  Does that work --

25            MR. HERRON:  The 14th of October, that's fine with

1    me.

2            THE COURT:  All right.  It's the 14th.  Again, I

3    don't know -- I know the matter has been pending and we had

4    three judges involved at one time, so -- and that didn't

5    make sense so all the cases were reassigned to me, so I know

6    it's taking some time here, but October 14 probably makes

7    sense.  It's only eight days after the 6th.

8            MR. AZMAN:  It's fine, Your Honor, for Honeywell.

9            THE COURT:  Okay.

10           MR. AZMAN:  It's not a problem.

11           THE COURT:  All right.

12           MR. AZMAN:  I understand the situation.

13           THE COURT:  Okay.

14           MR. HERRON:  Thank you, Your Honor, I appreciate

15   that accommodation.

16           THE COURT:  Absolutely.  All right.  So I write a

17   letter to Judge Fitzgerald, there is a reply brief filed by

18   Honeywell, then the parties --

19           MR. MACLAY:  That will be on the 31st; is that

20   right, Your Honor?

21           THE COURT:  Well let's see, can we have a date

22   from you, Mr. Azman, as to -- an outside date and be

23   cautious?

24           MR. AZMAN:  Yes, of course.  Now given that the

25   hearing is not until October 14th I'm going to be more

1    conservative with the date I give you, if that's okay.

2            THE COURT:  That's all right.

3            MR. AZMAN:  Excuse me just a second, I'm just

4    looking at my calendar here.  Why don't we say by

5    September 23rd.  That would give everyone three weeks to see

6    it, which I think is more than three weeks actually.  Yeah,

7    one, two --

8            MR. MACLAY:  That's during Rosh Hashanah and Yom

9    Kippur, we'd rather have it a little bit earlier than that.

10            MR. AZMAN:  I agree with my colleague.  Thank you

11    for pointing that out.

12            THE COURT:  Yeah.  How about the 9th of September?

13            MR. AZMAN:  I'm traveling on the 8th and 9th and

14    that entire weekend.  Could we do the following week perhaps

15    on maybe a Tuesday or Wednesday, the 13th or the 14th?

16    Would that work for Your Honor?

17            THE COURT:  Tuesday the 13th works fine.

18            MR. AZMAN:  Okay.  Let's do that.

19            MR. MACLAY:  That's fine for NARCO TAC too.

20            MR. HERRON:  That's fine.

21            THE COURT:  And then you'll have discussion -- if

22    NARCO would like to file a surreply you'll have discussion

23    and you'll come back to me if there's not agreement.

24            MR. AZMAN:  Absolutely.

25            MR. MACLAY:  Absolutely, Judge.

1           THE COURT:  All right.

2           MS. RAMSEY:  Judge Gross, this is Natalie Ramsey,

3    we filed joinders on behalf of a couple of law firms.

4           I just wanted to make sure that the opportunity to

5    file a surreply was going to be made available to us as well

6    on the same terms that the Court outlined for the NARCO

7    trust.

8           THE COURT:  I don't see why not.

9           MS. RAMSEY:  Thank you, Your Honor.

10          THE COURT:  Unless Mr. Maclay gives me a good

11   reason I think that's fine.

12          MR. MACLAY:  Well I think Natalie's suggestion is

13   excellent, Your Honor, it should probably extent to all

14   other parties, including, you know, the STR that Mr. Herron

15   represents, et cetera.

16          MR. AZMAN:  Your Honor, I think you may have been

17   asking whether it was acceptable to Honeywell.

18          THE COURT:  Yes, that's what I -- I'm sorry.

19          MR. AZMAN:  No, it's okay.  I'm okay with this,

20   but I will caution the Court that we may have concerns down

21   the road if 10 parties think they need to be filing 20-page

22   long surreplies that say all the same things but in a

23   different way.  And I don't think that's what anyone intends

24   to do, but I just want to put that on the record know so

25   that Your Honor is aware of that concern we have.  It's an

1     issue and I won't get into, but it's an issue that's come up

2     in the past and the court has ruled accordingly in the

3     Western Direct of Pennsylvania on that very issue.  So I

4     just want to bring it to Your Honor's attention.  But that's

5     fine.

6             THE COURT:  Well I don't want to have to read, you

7     know, many, many surreplies.

8             MR. AZMAN:  That makes two of us.

9             MS. RAMSEY:  Your Honor, yes, Natalie Ramsey

10    again.

11            We will commit to the Court to work with the NARCO

12    TAC to minimize any duplication of argument, understanding

13    that, you know, we'll be coming either to Honeywell or to

14    the Court in any event if we believe that a surreply is

15    necessary and can address specifics at that point.

16            MR. AZMAN:  Right.  And if Your Honor were to

17    permit parties to file joinders to the NARCO surreply, if

18    one is filed, that would probably obviate your court's

19    concern about the voluminous number of papers that could

20    theoretically be filed.

21            THE COURT:  That's right.  All right.  So other

22    parties will coordinate with NARCO, and to the extent they

23    need to file a brief surreply, assuming that that is all

24    right with Honeywell or with the Court after discussion,

25    that will be fine.

1          MR. AZMAN:  Thank you, Your Honor.

2          MS. RAMSEY:  Thank you, Your Honor.

3          MR. MACLAY:  Thank you, Your Honor.

4          MR. HERRON:  Thank you, Your Honor.

5          THE COURT:  All right, everyone, anything else?

6          MR. O'NEILL:  Your Honor -- Your Honor, if I

7    could.  This is James O'Neill.  I just wanted to address the

8    Court very briefly.

9          We represent W.R. Grace, one of the -- one of your

10   new debtors.

11         THE COURT:  Yes.

12         MR. O'NEILL:  And, Your Honor, we filed a very

13   brief response and objection to the motion.  We have been in

14   contact with counsel for Honeywell and we may be able to

15   resolve things that would make our objection unnecessary to

16   have to move forward, but in the event that we do not we

17   would -- you know, we would plan to attend the hearing and

18   press our objection at the appropriate time.

19         THE COURT:  Mr. O'Neill, it will be a pleasure to

20   have you there.

21         MR. O'NEILL:  Thank you.

22         And one more question for Your Honor.

23         THE COURT:  Yes.

24         MR. O'NEILL:  Did you want to set a time for the

25   October 14th or did you want to do that after today and put

1     it in an order or something?

2              THE COURT:  Well, Mr. O'Neill, you read my mind

3     because Ms. Garusi (ph) came out and asked me what time.

4              MR. O'NEILL:  Okay.

5              THE COURT:  So let me ask the parties.  You know,

6     I can start at 9:30, I can start at 10 o'clock.  I know

7     parties will be traveling.  Is there any preference, you

8     know, for 9:30 versus 10 o'clock?

9              MR. AZMAN:  From Honeywell I think 10 a.m. is

10    better if it's between the two of those times.

11             THE COURT:  Would you rather have it 10:30?

12             MR. AZMAN:  10:30 would be better, Your Honor.

13    The train ride up is not too long, but it's also not too

14    short.

15             THE COURT:  That -- you're coming from Washington?

16             MR. AZMAN:  New York, and I meant down.

17             THE COURT:  Oh, you're coming down.  Okay.  All

18    right.  Let's do 10:30.

19             MR. AZMAN:  That works for us.  Thank you.

20             MR. MACLAY:  That's fine with the NARCO TAC too.

21             MR. ISENBERG:  Your Honor, just to jump in

22    briefly, this is Adam Isenberg from Saul Ewing, we've been

23    counsel to Owens Corning.

24             We also filed a very brief response.  We have

25    spoken to Honeywell, we are hopeful that we can resolve our

1    issues in advance of the hearing, but just as a heads up to

2    Your Honor and the other parties, we may be showing up at

3    that hearing as well with a very narrow focus in terms of

4    Owens Corning's interest.

5            THE COURT:  All right, Mr. Isenberg, you'll be

6    welcome of course.

7            MR. ISENBERG:  Thank you, Your Honor.

8            THE COURT:  Anyone else have anything similar?

9            MR. SCHEPACARTER:  Your Honor, this is Richard

10   Schepacarter for the U.S. Trustee's Office.  How are you?

11           THE COURT:  How are you, Mr. Schepacarter?

12           MR. SCHEPACARTER:  Very well.  Thank you.

13           Some of the replies has left some of the issues

14   that U.S. Trustee may or may not have an issue with, so

15   we're going reserve all right to either -- most likely we'll

16   appear at the hearing without question, but we reserve our

17   right to file something in response in case one of the

18   parties addresses an issue that the U.S. Trustee is

19   interested in.

20           THE COURT:  All right.  I understand your position

21   and that of course is acceptable.

22           MR. SCHEPACARTER:  Thank you, Your Honor.

23           MR. MADRON:  Your Honor, good afternoon, it's

24   Jason Madron of Richards, Layton & Finger on behalf of

25   Armstrong World Industries.

1          Just answering Your Honor's call, we also filed a

2     very limited objection and reservation of rights on a very

3     discrete issue.  We may very well appear at the hearing, but

4     I anticipate that our role will be extremely limited.

5          THE COURT:  All right, Mr. Madron.  Thank you.

6          All right.  So hearing no one else I will write a

7     letter to Judge Fitzgerald, and I will see you all on the

8     14th of October at 10:30 and plan to argue both motions and

9     we'll take it from there.

10          MR. AZMAN:  And, Your Honor, one point of

11     clarification, and you obviously don't need to make this

12     determination right now, but I took Your Honor's oral orders

13     to mean that the access motions would be heard at that

14     hearing first and then afterward the referral motion.  Is

15     that correct?

16          THE COURT:  That's right.

17          MR. AZMAN:  Okay.  Great.  Thank you very much.

18          THE COURT:  All right everyone, I wish you all a

19     good day and we all have work to do and we'll get it down.

20          MR. AZMAN:  Thank you, Your Honor.

21          MR. MACLAY:  Your Honor, one final clarification

22     question.

23          THE COURT:  Yes, Mr. Maclay.

24          MR. MACLAY:  With respect to Honeywell's position

25     that they may file a separate brief addressing standing,

Page 44

1   would that also be filed at the same time as the reply

2   brief?

3           MR. AZMAN:  Yes, that's -- that works for us if

4   that's okay with the TAC counsel.

5           MR. MACLAY:  Yeah, absolutely.

6           THE COURT:  All right.  Very well.

7           All right, counsel, I wish you all a good day, and

8   if matters arise that require my attention don't hesitate to

9   call chambers and we will arrange another call.

10          MR. AZMAN:  Thank you, Your Honor.

11          THE COURT:  All right everyone, good day to you.

12      (Whereupon these proceedings were concluded at 1:45 PM)

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 45

1                    C E R T I F I C A T I O N

2

3       I, Dawn South, certify that the foregoing transcript is a

4       true and accurate record of the proceedings.

5       Dawn South

6       _____

7       Dawn South

8       AAERT Certified Electronic Transcriber CET**D-408

9

10

11

12      Date:  August 26, 2016

13

14

15

16

17

18

19

20

21

22      Veritext Legal Solutions

23      330 Old Country Road

24      Suite 300

25      Mineola, NY 11501